

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

---

**YANJUN CHE,**
**Plaintiff,**

**v.**

**KATHI VIDAL, in her official capacity as**
**Director of the United States Patent and Trademark Office,**
**Defendant.**

---

Civil Action No. ___1:25cv1893 MSN-WEF___ (To be assigned by the Court)

**COMPLAINT UNDER 35 U.S.C. §145**

---

**Plaintiff:**

YANJUN CHE, Pro Se

9404 Shoveller Dr.

Niagara Falls, Ontario

L2H 0M2, Canada

**Defendant:**

Kathi Vidal, Director of the United States Patent and Trademark Office

United States Patent and Trademark Office

600 Dulany Street

Alexandria, VA 22314

## I. Jurisdiction and Venue

This action is brought pursuant to 35 U.S.C. §145, which authorizes a patent applicant dissatisfied with a decision of the Patent Trial and Appeal Board (PTAB) to seek de novo judicial review in a United States District Court.

Jurisdiction is proper under 28 U.S.C. §§1331 and 1338(a), as this case arises under the patent laws of the United States.

Venue is proper in this Court pursuant to 35 U.S.C. §145 and 28 U.S.C. §1391(e)(1), because the Defendant is an officer of the United States acting in her official capacity, and the USPTO is headquartered in Alexandria, Virginia, within the jurisdiction of this Court.

## II. Parties

**Plaintiff:**

Yanjun Che, proceeding *pro se* (without attorney), is the inventor and applicant of U.S. Patent Application No. **14/252,778.**

Due to permanent visual impairment and financial hardship, Plaintiff is concurrently seeking In Forma Pauperis (IFP) status under 28 U.S.C. §1915 (see Exhibit D).

**Defendant:**

Kathi Vidal, in her official capacity as Director of the United States Patent and Trademark Office (USPTO), with official address at 600 Dulany Street, Alexandria, Virginia 22314.

### III. PRELIMINARY STATEMENT

This civil action is brought under 35 U.S.C. §145 before the United States District Court for

the Eastern District of Virginia Alexandria Division, seeking *de novo* judicial review of the

final decision of the Patent Trial and Appeal Board (PTAB) affirming the Examiner's

rejection of U.S. Patent **Application No. 14/252,778,** entitled *"Extraction of Gravitational*

*Field Energy".*

This case is not about a "perpetual motion" claim — it concerns the PTAB's failure to apply

the correct legal and scientific standards when evaluating an open gravitational system that

operates fully within the framework of Newtonian mechanics and the Law of Conservation of

Energy.

The Applicant does not claim the creation of energy, nor any violation of physical laws.

Instead, the invention demonstrates the conversion of gravitational potential energy into

mechanical work through the controlled formation of a non-buoyant region within a fluid,

achieved by buoyancy shielding.

This mechanism has been empirically verified through multiple experiments and formally

recognized by two granted U.S. patents — U.S. Patent Nos. 11,047,359 and 12,066,001 —

each confirming the same physical principle of gravitational–pressure coupling.

Despite these scientific facts and administrative precedents, the PTAB refused to

acknowledge the established operability and credibility of the invention..

Instead, it misapplied thermodynamic principles applicable only to closed systems, equated buoyant equilibrium with energy creation, and dismissed experimentally verified results as "incredible."

By doing so, the Board ignored both physical law and established patent jurisprudence, committing a reversible legal and procedural error under 5 U.S.C. §706(2)(A) and 35 U.S.C. §101.

At its core, this action seeks not to challenge physics, but to restore fidelity to law, evidence, and science within the administrative review process of the United States Patent and Trademark Office (USPTO).

## IV. STANDARD OF REVIEW

This action is governed by 35 U.S.C. §145 and 5 U.S.C. §706 of the Administrative Procedure Act (APA), which authorize judicial review of administrative agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

The U.S. Supreme Court and Federal Circuit have repeatedly affirmed that, while the PTAB is entitled to deference on questions of fact, its decisions must be supported by substantial evidence, scientifically sound reasoning, and faithful application of statutory law.
When an agency misapplies the law, ignores uncontroverted experimental evidence, or bases conclusions on incorrect scientific premises, its decision is reviewable and reversible.

4

(See *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29 (1983); *In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000); *Dickinson v. Zurko*, 527 U.S. 150 (1999)).

In particular, review in this case encompasses three categories of error:

**1 Legal Error:**

Whether the PTAB misapplied **35 U.S.C. §101** or **MPEP §2107.02** by equating "utility" with a fully operational prototype, rather than recognizing experimental proof of a specific, credible physical effect.

**2 Factual Error:**

Whether the PTAB disregarded uncontroverted experimental and mathematical evidence proving operability and reproducibility, contrary to *In re Brana*, 51 F.3d 1560 (Fed. Cir. 1995).

**3 Procedural Error / Unfairness:**

Whether the PTAB violated procedural fairness and due process under the APA by knowingly disregarding material evidence, failing to correct known errors, or applying scientific laws inapplicable to open gravitational systems.

Under **5 U.S.C. §706(2)(A)**, this Honourable Court must set aside agency actions that:

- lack a rational connection between the facts found and the conclusions reached;

- rest on an incorrect legal or scientific premise; or

- disregard material evidence without reasoned explanation.

Accordingly, the Applicant submits that:

- Questions of law are reviewable de novo;

- Questions of fact are reviewable under the substantial evidence standard.

Because the PTAB's decisions fail both tests, the determinations should be vacated or remanded for corrective action.

## V. FACTUAL BACKGROUND

### 1. Introduction

This civil action is brought under 35 U.S.C. §145 before the United States District Court for the Eastern District of Virginia Alexandria Division, seeking de novo judicial review of the final decision of the Patent Trial and Appeal Board (PTAB) that affirmed the Examiner's rejection of all pending claims in U.S. Patent Application No. **14/252,778**, entitled ***"Extraction of Gravitational Field Energy."***

The Plaintiff respectfully requests that this Honourable Court reverse the PTAB's erroneous decision and authorize allowance of the application, which discloses a scientifically valid and practically operable energy conversion system based on established Newtonian mechanics and hydrostatics.

### 2. Filing and Technical Field

The application was filed on **April 15, 2014**, with the **United States Patent and Trademark Office (USPTO)**.

The invention relates to a novel method and system for extracting gravitational potential energy from a fluid medium by creating **non-buoyant** and **buoyant** regions, thereby forming asymmetric pressure fields and enabling continuous conversion of gravitational potential energy into mechanical work.

## 3. Initial Examination and Rejection

On **March 24, 2017**, the Examiner issued a **Non-Final Rejection** under **35 U.S.C. §§101 and 112(a)**, asserting that the claimed invention constituted an "inoperable perpetual motion machine."

No prior art rejections under §§102 or 103 were made.

On **July 27, 2017**, a **Final Rejection** was issued on the same grounds, alleging that the invention "violates the law of energy conservation."

In response, **the Applicant submitted experimental data** demonstrating that objects can lose buoyancy under controlled pressure-shielding conditions — a phenomenon consistent with Newtonian mechanics and verified empirically.

## 4. First Appeal and PTAB Decision

- On August 9, 2021, a Notice of Appeal was filed with a Pre-Appeal Brief Conference Request.

- On October 10, 2021, an Appeal Brief was Filed, the case was forwarded to the PTAB as **Appeal No. 2022-002626.**

- On December 12, 2022, the PTAB affirmed the rejection but acknowledged that the mathematical and physical analyses were "internally consistent."
  The Board suggested the submission of further system-level examples.

- On February 13, 2023, the Applicant filed a Request for Rehearing, which was denied on March 7, 2023, with the same §§101 and 112(a) grounds maintained.

### 5. Continued Examination and Second Rejection

- May 7, 2023 – The Applicant filed a Request for Continued Examination (RCE) accompanied by an amendment.

- May 24, 2023 – A Non-Final Rejection was issued by the Examiner.

- August 24, 2023 – The Applicant filed an Amendment / Request for Reconsideration.

- October 30, 2023 – The Examiner issued a Final Rejection.

- November 23, 2023 – The Applicant filed an After Final Consideration Program (AFCP) Request.

Following the first PTAB decision, Examiner **Viet P. Nguyen** reopened prosecution.
Between **May and October, 2023,** the Applicant filed **"Request for Reconsideration"**,
deleting all instances of "infinite" and providing **five independent experimental reports**
verifying the "loss-of-buoyancy" effect.

Although the Examiner acknowledged that the amendments introduced new searchable content, he refused entry and issued a **Final Office Action** on **October 30, 2023,** maintaining the §§101 and 112(a) rejections and citing *res judicata* without legal basis.

### 6. Second Appeal and PTAB Decision (Appeal No. 2025-000127)

- April 15,2024, The Applicant appealed again under Appeal No. 2025-000127.
- On August 27, 2025, the PTAB affirmed the rejection, citing the word "infinite" in the specification—despite its absence in any claim.

  The Applicant clarified that "infinite" merely described the Earth's gravitational potential relative to human scales, not as a technical limitation.

  Nevertheless, the PTAB relied on this descriptive phrasing to reaffirm the §§101 and 112(a) rejections, without addressing new evidence or claim amendments.

### 7. Procedural Irregularities

Throughout prosecution, the Examiner refused an interview request and After-Final Amendment, violating the Applicant's rights under 37 C.F.R. §1.133(b).

Both PTAB decisions relied on incomplete and outdated records, ignoring newly submitted experimental data—contrary to 5 U.S.C. §706 and the duty of fair consideration under the Administrative Procedure Act (APA).

### 8. Present Action under 35 U.S.C. §145

The Plaintiff now brings this civil action under 35 U.S.C. §145 before the United States District Court for the Eastern District of Virginia Alexandria Division, seeking de novo judicial review of the PTAB's final decision.

The Plaintiff asserts that the PTAB's decisions were legally erroneous, procedurally defective, and factually unsupported.

The invention has demonstrated operability and credible utility through five reproducible experiments, consistent with Newtonian mechanics, and its principles have already been recognized **in two granted U.S. patents (Nos. 11,047,359 and 12,066,001).**

## VI. STATEMENT OF FACTS AND TECHNICAL BASIS OF THE INVENTION

### 1. Overview of the Invention and Scientific Principles

The present invention relates to a method and system for extracting gravitational field energy by utilizing a *"loss-of-buoyancy method"* to construct a non-buoyant region within a fluid medium.

The central principle of this invention lies in breaking buoyancy symmetry—intentionally altering the natural equilibrium of forces acting on submerged objects—so that the system can perform useful work in accordance with Newton's Second Law of Motion ($F = ma$).

This invention operates as an open system, continuously interacting with Earth's gravitational field, and draws its energy input from the gravitational potential naturally maintained by that field.

Accordingly, it fully conforms to the **Law of Conservation of Energy** and is fundamentally distinct from any so-called *perpetual motion machine*.

### 2. Scientific Justification: Necessity of Symmetry Breaking

Scientific theory establishes that useful work can only arise from a difference in pressure, potential, or temperature.

In a static fluid, Archimedes' Principle dictates uniform pressure transmission in all directions, creating a 360° equilibrium symmetry that prevents net work.

By contrast, the present invention introduces controlled asymmetry.

When the lower surface of an object is physically shielded or isolated, the upward hydrostatic pressure is removed while the downward pressure remains, creating a net force.

This breaks buoyancy symmetry and generates a **sustained pressure potential difference** ($\Delta p \neq 0$) that enables the extraction of mechanical work from the gravitational field.

### 3. The "Loss of Buoyancy Method" and Formation of a Non-Buoyant Region

Buoyancy is a contact force arising from pressure differentials between the upper and lower surfaces of an immersed body.

If the lower surface is shielded from the surrounding fluid, the upward hydrostatic pressure disappears, while downward force remains—causing loss of buoyancy.

This converts buoyant potential energy into gravitational potential energy.

When buoyant and non-buoyant bodies coexist within the same system, asymmetric pressure distribution drives continuous circulation, forming the dynamic basis for gravitational energy extraction.

## 4. Integration of Method and Energy Conversion Mechanism

The claimed *"method for extracting gravitational field energy"* is realized through the *"loss-of-buoyancy method."*

The latter provides the mechanical means (asymmetry), while the former defines the functional purpose (conversion of gravitational potential into mechanical work).

Together they form a complete, operable, and reproducible mechanism, not a theoretical abstraction.

## 5. Conformity with Physical Laws and Rejection of Misclassification

This invention operates fully within classical physics.

It does not create energy but converts gravitational potential energy into kinetic or mechanical energy.

Labeling it a "perpetual motion machine" is incorrect both legally and scientifically.

A true perpetual motion machine is an isolated system attempting to generate energy from nothing, violating the Law of Conservation of Energy.

By contrast, this invention functions as an open system that continuously interacts with Earth's gravitational field, maintaining a natural pressure potential ($dp/dz = -\rho g$). Thus, the

system converts gravitational potential into mechanical work in a lawful, energy-conserving process.

## 6. Experimental Validation

- **Experiment 1 — Loss of Buoyancy by Shielding (Paraffin Test 1)**

**Objective:** Demonstrate that a buoyant paraffin block loses upward buoyancy when its bottom is shielded by glass.

**Observation:** The paraffin, normally floating, remained stationary or descended.

**Conclusion:** Confirms buoyancy is a contact force removable by shielding.

- **Experiment 2 — Reproducibility of Buoyancy Loss (Paraffin Test 2)**

**Observation:** Repeated experiments yielded identical buoyancy-loss behavior.

**Conclusion:** The effect is reproducible, verifying physical reliability.

- **Experiment 3 — Loss of Buoyancy in Solid Floating Body (Wood Test)**

**Objective:** Demonstrate that a wood block loses buoyancy when its underside is shielded.

**Observation:** Despite being less dense than water, the wood sank when its lower surface was covered by glass.

**Conclusion:** Confirms buoyancy can be locally neutralized without density change.

- **Experiment 4 — Buoyant and Non-Buoyant Region Interaction**

**Objective:** Demonstrate coexistence of buoyant and non-buoyant zones.

**Observation:** The same floating object lost buoyancy in the shielded region and regained it upon re-entering the unshielded region.

**Conclusion:** Confirms controlled formation of buoyant/non-buoyant zones within one system.

- **Experiment 5 — Gravitational Gain in Non-Buoyant Zone**

**Objective:** Show that objects in non-buoyant regions gain net gravitational force.

**Observation:** In the shielded zone, objects experienced downward acceleration and increased base pressure.

**Conclusion:** Confirms gravitational potential dominates when buoyancy is neutralized, forming the energy-conversion basis.

**Overall Experimental Conclusion**

These five experiments collectively prove that buoyancy is a **pressure-based contact force** that can be selectively eliminated through structural shielding.

This allows creation of **non-buoyant regions** where gravitational potential dominates, forming the operational basis of the invention's mechanism.

**7. Prior Granted Patents Demonstrating Operability**

The USPTO has already granted U.S. Patents **11,047,359** and **12,066,001**, both titled *"Gravitational Turbine Engine,"* which cite U.S. Application **14/252,778** (this invention). The Examiner explicitly acknowledged that:

"The upper part of the rotor shields the pressure on the lower fluid chamber, causing downward motion under gravity, while the lower part experiences upward buoyancy, forming a continuous energy conversion cycle."

These grants constitute administrative recognition of the invention's physical validity. Under the Doctrine of Administrative Consistency, they serve as *prima facie evidence* of enablement and operability for the same mechanism, binding the USPTO to apply consistent reasoning unless new scientific distinctions exist.

**Summary Conclusion**

The record establishes:

1. The invention operates within open-system Newtonian mechanics;

2. Its mechanism has been experimentally and reproducibly verified;

3. Two U.S. patents confirm identical physical principles;

4. Therefore, PTAB's rejection lacks factual and legal foundation.

## VII. LEGAL ERRORS AND GROUNDS FOR REVERSAL

### A. Misapplication of Utility Law (35 U.S.C. §101; MPEP §2107.02)

**1. Incorrect Legal Standard Applied.**

The PTAB equated "utility" with the existence of a fully constructed, energy-extracting machine, holding that proof of utility requires "an actual working system capable of generating energy," and describing the application as merely disclosing "a principle for future use." Such reasoning improperly elevates the statutory threshold. Section 101 does not require a commercial apparatus or prototype, but only a specific, substantial, and credible utility for the claimed subject matter.

**2. Controlling §101 and MPEP Standards.**

Under MPEP §2107.02, an invention satisfies §101 when its asserted use is specific, substantial, and credible — demonstrated by logical reasoning, accepted scientific principles, or empirical evidence. No working model is required. *In re Brana*, 51 F.3d 1560, 1566–67 (Fed. Cir. 1995) rejects any quasi-"clinical proof" demand and confirms that credible scientific support suffices. Likewise, *Brenner v. Manson*, 383 U.S. 519 (1966) teaches that §101 guards against a mere "hunting license," not by imposing a prototype requirement. The Board's approach conflated statutory utility with a commercial demonstration standard, misapplying controlling law.

**3. Mischaracterization of Claims and Evidence.**

The claims and record evidence concern a method and structure that creates a non-buoyant region within a fluid, causing an object to lose buoyancy and generate net force, torque, and discharge flow in open coupling with Earth's gravitational field. Five reproducible experiments and corresponding mathematical analyses demonstrate this physical effect,

establishing a specific, substantial, and credible utility for the claimed subject matter. The

PTAB offered no contrary scientific data, instead demanding proof of a complete energy-

output system — an error under §101 and MPEP §2107.02.

**4. Legal Consequences.**

By substituting a commercial or operational display for the statutory utility test, the Board

exceeded its authority under §101 and misapplied controlling law. Reversal or remand is

warranted with instructions to apply the correct standard — evaluating whether the record

shows a specific, substantial, and credible utility for the claimed invention, rather than

requiring a fully constructed "power-generation system."

**B. Failure to Apply the Presumption of Operability**

**1. Existing Presumption Ignored.**

Once an invention demonstrates reproducible and observable physical effects consistent with

established scientific principles, the law presumes the invention to be operable and useful

unless the Office provides substantial evidence to the contrary. This presumption, codified in

*MPEP* §2107.02 (II)(B)(1), has long guided the proper application of 35 U.S.C. §101. Its

purpose is to prevent the Office from rejecting inventions based on mere skepticism or

subjective disbelief when empirical, repeatable phenomena have been shown.

**2. Omission by the Board.**

The Applicant submitted Five controlled experiments into the record, each demonstrating

that when the upward hydrostatic pressure beneath a body is shielded, the body loses

buoyancy, exhibits measurable downward acceleration, and maintains a sustained pressure differential. These tests were reproducible and supported by quantitative data and photographic evidence. Under *MPEP* §2107.02, once such verified effects are established, the burden shifts to the Office to provide clear, objective counter-evidence to disprove operability. The PTAB, however, cited no such data, conducted no contrary experiments, and offered no fluid-mechanical analysis to refute the Applicant's verified results.

### 3. Legal Consequences of the Omission.

By demanding that the Applicant prove the system "cannot fail" or that energy "cannot dissipate," the Board required proof of a negative—a scientifically and legally impossible task. This inversion of the burden of proof contravenes the framework set forth in *MPEP* §2107.02, *In re Brana*, 51 F.3d 1560 (Fed. Cir. 1995), and the principles of administrative fairness recognized in federal law. Ignoring the presumption of operability and requiring absolute proof of impossibility constitutes a reversible legal error.

### 4. Proper Analytical Framework.

Correct application of *MPEP* §2107.02 requires recognition that the observed "loss-of-buoyancy" phenomenon—caused by shielding the upward hydrostatic pressure—is a credible and reproducible physical effect. In the absence of contrary experimental evidence, the presumption of operability must stand, and the invention should be deemed to satisfy the utility requirement of 35 U.S.C. §101. See *In re Brana*, 51 F.3d at 1566–67; *MPEP* §2107.02 (II)(B)(1); and Federal Court Law §18.1(4)(d).

**C. Reliance on Incorrect Scientific Principles (Misapprehension of Fact as Law)**

**1. Threshold Mischaracterization.**

The Board's rejection rests on an incorrect scientific foundation: it equated the Applicant's invention with historically "inoperable" gravity–buoyancy devices and treated them as equivalent. That comparison is scientifically unfounded. Those earlier devices achieved motion only by mechanically varying volume or density to overcome buoyant resistance—an approach that consumes the same energy it produces, yielding no net output. [*2, 9*]

**2. Scientific Misconception Underlying the Decision.**

By labeling the invention a "perpetual motion machine," the Board imported thermodynamic objections that apply only to closed or isolated systems, not to open systems continuously exchanging energy with Earth's gravitational field. This confusion between a closed, self-contained system and an open gravitational system underlies the rejection and distorts the analysis. [*2, 8*]

**3. Correct Scientific Framework.**

In classical fluid mechanics, the governing relation $dp/dz = -\rho g$ demonstrates that Earth's gravitational field continuously maintains a pressure-potential distribution within a fluid. When the upward hydrostatic pressure beneath a body is shielded, a non-buoyant region forms, breaking local hydrostatic equilibrium and producing net force and torque that drive fluid motion and discharge. This process converts gravitational potential

energy into kinetic energy through constant interaction with the external gravitational field—a mechanism fully consistent with the law of energy conservation. The Applicant's five controlled experiments empirically verified this reproducible behavior. [3, 4]

**4. Misstatement of Buoyancy and Thermodynamics.**

The Board treated buoyancy as an immutable, omnidirectional upward force rather than a pressure-gradient vector governed by boundary conditions. By misapplying Archimedes' static law to a dynamic, pressure-variable environment, the Board confused static equilibrium with flow mechanics. When such factual misapprehensions are elevated to a legal rationale for rejection, they constitute an error of law reviewable under *Housen v. Nikolaisen*, 2002 SCC 33, ¶ 36. [4, 3]

**5. Improper Use of Prior Art References.**

The Board relied on U.S. Pat. Nos. 8,011,182 and 3,934,964 as examples of "gravity–buoyancy energy systems," asserting that such principles are inoperative. Those systems depend on mechanical compression or volume change to overcome buoyancy, forming a closed energy pathway requiring external work input. By contrast, the Applicant's invention operates as an open gravitational system that uses a buoyancy-shielding mechanism to create non-buoyant regions and sustain motion through gravitational pressure differentials. The Board's failure to distinguish these fundamentally different systems invalidates its reasoning. [9, 2]

**6. Absence of Contradictory Analysis and Supporting Patents.**

The Board identified no physical reason why the Applicant's structure could not operate as described, nor did it provide any counter-analysis in fluid mechanics. It also failed to address the Applicant's mathematical proofs and empirical data. Notably, the same inventor has already been granted two U.S. patents — US 11,047,359 and US 12,066,001 — disclosing the same gravitational–pressure mechanism, confirming the system's enablement and operability. [*6, 9*] Therefore, the Board's rejection was not based on scientific fact but on a misapplication of physical law and prior art.

**7. Legal Consequence.**

By elevating this scientific misunderstanding into a legal conclusion of "inoperability," the Board committed a reviewable error of law under *Housen v. Nikolaisen* (2002 SCC 33, ¶ 36). When properly understood — namely, as a dynamic process in which a body loses buoyancy through the formation of non-buoyant regions — the invention demonstrates a reproducible, energy-conserving, and practically useful conversion of gravitational potential energy into kinetic energy. This satisfies the statutory utility requirement of 35 U.S.C. §101. [*3, 6*]

**D. Arbitrary and Capricious Decision; Lack of Substantial Evidence (Administrative Procedure Act)**

1. Standard of Review.

Under the Administrative Procedure Act ("APA") and Federal Courts Act §18.1(4)(d), a

decision is reviewable if it is "based on an erroneous finding of fact made in a perverse

or capricious manner or without regard to the material before it." See Motor Vehicle

Mfrs. v. State Farm, 463 U.S. 29, 43 (1983); Dickinson v. Zurko, 527 U.S. 150 (1999);

In re Gartside, 203 F.3d 1305, 1312–16 (Fed. Cir. 2000).

The PTAB's decision in Appeal No. 2022-002626 squarely falls within this definition: it

disregarded compelling, reproducible experimental and mathematical evidence

confirming operability, while adopting unsupported conjectures advanced by the

Examiner.

2. Evidence of Record Ignored.

The Applicant submitted five independent controlled experiments showing that when the

upward hydrostatic pressure beneath a submerged body is shielded, the body loses

buoyancy, exhibits measurable downward acceleration, and maintains a sustained

pressure differential. Each experiment was reproducible, quantitatively measured, and

visually documented, supported by the established relation $dp/dz = -\rho g$. The Board's

written decision, however, made no mention of numerical data, omitted all comparison

to theoretical models, and offered no scientific reasoning to refute the Applicant's

results.

3. Failure to Consider Material Facts and Granted Patents.

The same inventor has already been granted two U.S. patents — US 11,047,359 and US 12,066,001 — disclosing identical gravitational–pressure mechanisms. The USPTO has therefore recognized the same principle as both enabling and operable. The Board failed to consider these granted patents, despite their direct relevance to the claimed subject matter and to the principle of consistent administrative treatment. This omission demonstrates disregard for material evidence already validated by the same examining authority.

4. Reliance on Conjecture Instead of Evidence.

Rather than engaging with the Applicant's empirical record, the Board relied on speculative assertions that "the claimed system cannot sustain motion without external energy." No test, simulation, or cited reference supported that claim. Such conjecture, unsupported by factual record, cannot legally outweigh verified experimental results. This substitution of speculation for evidence contravenes Housen v. Nikolaisen, 2002 SCC 33, ¶36, and violates the fundamental duty of reasoned decision-making.

5. Unreasonableness in Both Substance and Manner.

A decision that (i) omits discussion of key evidence, (ii) fails to engage with relevant scientific findings, and (iii) adopts unevidenced suppositions, is unreasonable in substance and capricious in manner under §18.1(4)(d). The Board's refusal to confront

the Applicant's verified experiments and granted patents constitutes both a factual error

and a procedural defect, rendering the decision unjust and reviewable.

6. Conclusion.

The record evidence—mathematical, experimental, and corroborated by two granted

U.S. patents—conclusively demonstrates that the invention operates as described and

satisfies the utility requirement of 35 U.S.C. §101. The Board's disregard of such

evidence and reliance on unsupported conjecture render its decision unreasonable,

arbitrary, and contrary to law. It should therefore be set aside or remanded pursuant to

Federal Courts Act §18.1(4)(d) for reconsideration consistent with the evidentiary record

and applicable legal standards.

**E. Failure to Address Material Evidence; Chenery Error**

1. Duty of Reasoned and Fair Decision.

Under SEC v. Chenery Corp., 318 U.S. 80 (1943), an agency decision must "stand or fall

on the grounds invoked by the agency itself." A quasi-judicial body such as the PTAB is

bound by the principles of natural justice and procedural fairness. Once an applicant

identifies factual and analytical errors with credible scientific and legal support, the

Board has a duty to engage with and correct those errors rather than repeating them by

silence or conclusory statement. [10]

2. Specific Errors Ignored Despite Notice.

In the Applicant's rehearing request (Mar. 7, 2023), five specific errors were identified: (1) mischaracterizing buoyancy as an omnidirectional force rather than a pressure-gradient vector; (2) misapplying thermodynamic principles of closed systems to an open gravitational system; (3) failing to scientifically evaluate five verified "loss-of-buoyancy" experiments; (4) wrongly concluding that the application "lacks an embodiment" despite detailed structural and experimental descriptions; and (5) ignoring two granted U.S. patents (US 11,047,359 and US 12,066,001) that disclose the same gravitational-pressure mechanism, proving that a person skilled in the art can readily practice the invention.

3. Disregard of Administrative Consistency and Presumption of Enablement.

The Board's failure to consider the two issued patents violated the principle of administrative consistency and the Presumption of Enablement accorded to granted patents. When an agency departs from its own established findings, it must explain its reasons with specificity. FCC v. Fox Television Stations, 556 U.S. 502 (2009). Here, the USPTO has already recognized the same mechanism as enabling and operable, yet the Board rejected it without any scientific or legal basis for departure. Such unexplained inconsistency is arbitrary, unfair, and contrary to law. [6][11]

4. Failure to Address Corrective Evidence.

Despite the Applicant's detailed rebuttals—supported by empirical data, mathematical proofs, and legal citations—the Board's rehearing decision offered no substantive analysis or rectification. Instead, it simply repeated its prior errors verbatim. Such knowing refusal to correct identified scientific and legal mistakes constitutes a violation of procedural fairness and the principle of natural justice. [10]

5. Legal Consequence.

Under Federal Courts Act §18.1(4)(c)–(d), a decision that ignores evidence, defies law, or fails to observe fairness is reviewable and must be set aside. The Board's failure to engage with the Applicant's scientific demonstrations, prior patents, and legal authorities renders its decision both procedurally unfair and legally unreasonable. A rehearing conducted under such circumstances cannot satisfy the requirement of impartial adjudication under Canadian administrative law.

**F. Administrative Consistency and §145 De Novo Posture**

1. Intra-Agency Recognition of the Same Mechanism.

Within the same agency, two issued U.S. patents recognizing the identical buoyancy-shielding and gravitational pressure mechanism constitute compelling administrative evidence of operability and enablement. An unexplained departure from such intra-agency recognition undermines administrative consistency and predictability.

Supplement: Recognition of Utility and Operability by the USPTO.

The Applicant's previously granted U.S. Patent No. 11,047,359, titled "Gravitational Field Engine," expressly embodies the same gravitational–pressure energy conversion principle described in the present application. In paragraph [0002] of that issued patent, the USPTO accepted and allowed the concept that an object which loses buoyancy within a static fluid can extract gravitational field energy by utilizing the pressure differential between buoyant and non-buoyant regions to generate kinetic energy. This prior allowance constitutes formal recognition by the USPTO that the principle is both scientifically valid and practically applicable. Under MPEP §2107.02, even a small amount of credible experimental evidence is sufficient to establish utility under 35 U.S.C. §101. The fact that the USPTO has already granted a patent on the same underlying mechanism conclusively demonstrates that this energy conversion process satisfies the statutory utility requirement. Furthermore, the issued patent contains a complete and enabling disclosure under 35 U.S.C. §112(a), describing the method of inducing loss of buoyancy and converting gravitational potential energy into kinetic energy with sufficient detail such that a person having ordinary skill in the art (PHOSITA) can understand and reproduce the invention without undue experimentation. Therefore, the PTAB's assertion that "a person skilled in the art would not know how to apply the claimed principle" is directly contradicted by the USPTO's own prior determination that the same principle was fully enabled and operable in the Applicant's

earlier granted patent. The existence of this granted patent establishes both (1) the

operability of the physical mechanism and (2) the sufficiency of the written description

and enablement in guiding skilled practitioners to apply the invention in practice. See

U.S. Patent No. 11,047,359 (Application No. 14/252,778), specification col. 1, lines 20–

45 ([0002]); attached as Exhibit C.

2. Presumption of Enablement and Duty of Consistency.

A granted U.S. patent is entitled to a Presumption of Enablement. In re Antor Media

Corp., 689 F.3d 1282 (Fed. Cir. 2012). If the Office seeks to refute that presumption, the

burden rests on the agency to produce substantial contrary evidence. Here, the Board

neither presented contrary evidence nor acknowledged the prior determinations made by

the same agency under the same scientific principle.

3. Administrative Consistency under Fox and the APA.

Under the doctrine of Administrative Consistency, an agency must provide a reasoned

explanation when departing from its prior conclusions based on materially identical

facts. As held in FCC v. Fox Television Stations, Inc., 556 U.S. 502 (2009), unexplained

changes in agency position are arbitrary and capricious under 5 U.S.C. §706(2)(A). The

Board's failure to justify its reversal of the USPTO's own prior recognition of

operability is both a factual error and a legal violation.

4. §145 De Novo Posture and Evidentiary Scope.

In a 35 U.S.C. §145 action, this Court conducts de novo proceedings and may admit new evidence and make its own factual findings. Kappos v. Hyatt, 566 U.S. 431, 444–46 (2012). Given the complete record—including verified experiments, mathematical proofs, and two issued U.S. patents confirming the same gravitational–pressure mechanism—reversal, or at minimum a remand with instructions to apply the correct §101 standard and to credit the presumption of operability, is warranted. See also Juicy Whip, Inc. v. Orange Bang, Inc., 185 F.3d 1364 (Fed. Cir. 1999); Newman v. Quigg, 877 F.2d 1575 (Fed. Cir. 1989).

## G. Summary of Legal Errors and Requested Disposition

1. Overview of Reviewable Errors.

The PTAB's final rejection rests on multiple, reviewable errors of law, fact, and procedure: (1) misapplication of 35 U.S.C. §101 and MPEP §2107.02, substituting a commercial demonstration requirement for the statutory test of utility; (2) failure to apply the presumption of operability despite verified experimental evidence; (3) reliance on incorrect scientific premises, including misinterpretation of buoyancy and thermodynamics; (4) disregard of uncontested experimental, mathematical, and patent evidence, including two issued U.S. patents confirming the same gravitational–pressure

mechanism; and (5) violations of Chenery, State Farm, and the APA's substantial-evidence requirement, resulting in an arbitrary and capricious decision.

2. Administrative and Legal Consequences.

These cumulative deficiencies violate fundamental administrative law doctrines—particularly the Presumption of Enablement, the Administrative Consistency Principle, and the Requirement of Reasoned Decision-Making under the APA. Collectively, they render the PTAB's decision unreasonable, unsupported by substantial evidence, and contrary to law.

3. Requested Disposition.

Accordingly, the Court should reverse the PTAB's decisions or, in the alternative, remand the matter with specific instructions to: (i) apply the correct §101 utility standard as articulated in In re Brana and Brenner v. Manson; (ii) credit the presumption of operability and enablement absent substantial contrary evidence; and (iii) substantively evaluate the Applicant's experimental data, mathematical demonstrations, and issued patent evidence consistent with Chenery and State Farm.

4. Conclusion.

The Applicant respectfully submits that the record—comprising empirical evidence, mathematical validation, and prior USPTO recognition—conclusively demonstrates

compliance with §101 and §112(a). The PTAB's contrary findings lack factual and legal

foundation. For these reasons, the Court should set aside or reverse the PTAB's

decisions under 5 U.S.C. §706(2)(A) and Federal Courts Act §18.1(4)(d), or

alternatively, remand the case with appropriate instructions ensuring reasoned and

scientifically grounded reconsideration.

## VIII. RELIEF SOUGHT

For the reasons set forth above, Plaintiff respectfully requests that this Honorable Court enter

judgment in his/her favor and grant the following relief:

**A. Primary Relief: Reversal and Immediate Patent Issuance** An order reversing the

PTAB's final decisions dated December 12, 2022 (Decision on Appeal, see Exhibit A),and

August 27, 2025 (Decision on Request for Rehearing, see Exhibit B), ,and directing the

USPTO to issue a Notice of Allowance for U.S. Patent Application Serial No. 14/252,778, as

originally filed or as amended. The record, including five reproducible experiments and two

granted U.S. patents (US 11,047,359 and US 12,066,001) validating the gravitational–

pressure conversion mechanism, conclusively demonstrates compliance with 35 U.S.C. §§

101 (utility) and 112(a) (enablement and written description).

**B. Declaratory Relief**

1. A judicial declaration that the claimed invention satisfies the statutory utility requirement of

   35 U.S.C. § 101, through reproducible and empirically verified conversion of gravitational

   potential energy into kinetic energy via the loss-of-buoyancy method and non-buoyant region

formation, meeting the "specific, substantial, and credible utility" standard under MPEP §

2107.02 and *In re Brana*, 51 F.3d 1560 (Fed. Cir. 1995).

2. A finding that the PTAB's decisions were arbitrary, capricious, and contrary to law under 5

U.S.C. § 706(2)(A), for disregarding verified experimental and mathematical evidence while

relying on unsupported conjecture.

3. A determination that the PTAB's rehearing decision violated principles of procedural fairness

and natural justice by repeating previously identified scientific and factual errors and refusing

to address corrective submissions, contrary to *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463

U.S. 29 (1983), and *SEC v. Chenery Corp.*, 318 U.S. 80 (1943).

**C. Alternative Relief: Remand for Further Proceedings** Should immediate issuance not be

granted, an order remanding the case to the USPTO for further proceedings consistent with

the Court's findings, including assignment to a newly constituted PTAB panel of technically

qualified members who did not participate in prior decisions, to ensure impartial and

scientifically competent reconsideration under the Administrative Procedure Act.

**D. Ancillary Relief: Interpreter Services** Pursuant to 28 U.S.C. § 1827 (Court Interpreters

Act), provision of a certified Mandarin–English interpreter for all hearings and oral

proceedings, to ensure equal access to justice and due process, given Plaintiff's permanent

visual impairment and limited English proficiency. If Plaintiff's application to proceed in

forma pauperis is granted, such services shall be at government expense.

**E. Costs and Fee Reimbursement**

Taxable costs of this action as allowed by law under 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d).

1. Reimbursement or refund of official and litigation-related fees incurred during prosecution and appeal of the subject application, pursuant to the Equal Access to Justice Act (28 U.S.C. § 2412), 35 U.S.C. § 42(d), and 37 C.F.R. § 1.26(a), including but not limited to: (a) The Request for Continued Examination (RCE) fee, appeal fee, forwarding fee, PTAB briefing fee, and rehearing fee; (b) Additional taxable court costs under 28 U.S.C. § 1920; (c) Out-of-pocket litigation expenses, such as postage, mailing, printing, and document reproduction costs, as necessary expenses under 28 U.S.C. § 2412(d)(1)(A). Plaintiff, appearing pro se, acknowledges that EAJA attorney-fee provisions do not apply to self-represented litigants but seeks recovery of permitted administrative and litigation costs.

**F. Further Relief** Such other and further relief as this Honorable Court deems just and proper in the interests of fairness, justice, and the integrity of patent adjudication.


Respectfully submitted,


Yanjun Che, Applicant / Appellant, Pro Se

Address: 9404 Shoveller Dr.
            Niagara Falls, Ontario
            L2H 0M2, Canada

Phone: 647-706-6678

Date: OCT 20, 2025

33